Please step up and identify yourselves. Scott Lane on behalf of the plaintiffs. Garrett Bain on behalf of the defendants. Okay, you know our, what should I say? Normally it's 15-15. If we ask a lot of questions, we give you some leeway. The emphasis here is, I'll put it quite clearly, it appears to me as most of us who are trial judges, we tend to lump 619s and summary judgment motions together as one and the same. In most cases, that may be true. In a few, it's not. So I ask you to make clear your position and exactly why here. Okay. I would like to reserve five minutes, if that's okay. Sure. Please, the court, counsel. You know, we are appealing Judge Lawrence's order granting the 2619 motion to dismiss. And although Judge Lawrence eventually entered an order granting the 2619 motion, I think it's clear during the hearing and during the ruling that the trial court appeared to be confused as to which motion was actually pending at the time. And a few of his comments that were made during the hearing I think shed light on that. The matter before me today is a question of summary judgment. The question is, is there a trial issue of fact as to breach of duty? The plaintiff's affidavit was wholly insufficient to constitute a basis for denying summary judgment. The case was not Why was it insufficient? Well, this is what the judge is saying. Okay. Let's just forget what he said and get to the meat. Sure. The bottom line is, Your Honor. I think we've agreed that there are variances of 619 and a summary judgment. And we're not saying you're right or wrong. We're just saying tell us why specifically. Why it would be inappropriate to treat this as a summary judgment? Yes. Because we're at the pleading stage. And this court, I'm sorry, the trial court, made findings of fact, didn't accept the allegations in the complaint as true, and as a result required proof by the plaintiff before any discovery was being done at all of allegations made in the complaint. Specifically, the trial judge said, I don't see the evidence in the record supporting the fact that the defendant made these promises. Well, we didn't have an opportunity yet to prove that, but we did actually end up providing the court, just as a matter of being safe and covering all bases, we did provide an affidavit from the plaintiff stating that all the allegations contained in the complaint are true. So what happened in this case is the judge was hearing a 2619 motion, should have accepted all of the allegations in the pleadings as true, to make it even. Well, counsel, your complaint, as far as I have read it several times, made no mention of telephones. You talked about the fact that the desks were supposed to be manned. I think you were saying that all security desks within that 24-building complex should have been manned 24-7, if that's what you were told, and that you were told to give an in-person request. I think you said that in the complaint. You also said it in the counter affidavit. But your complaint says nothing about telephones. And now the defendant comes forward and says there was a phone, clearly marked phone, with a phone number above it, in the Goldblatt Pavilion. There was an emergency phone outside. Is there any question for us as to whether that's true, that there were phones that she could have used? I don't know whether or not there were any phones. I mean, that is something that Mr. Morris, the head of security, is saying. There were phones that at the time the employees were hired, they were told about phones. The fact is this occurred several months after she was hired, after the orientation. That's when she was offered the job to work at the night shift. That's when they said, in exchange for you working the night shift, we're going to make these promises to you. So whether or not there were phones that were discussed at the time, at orientation, that's not even relevant. But the fact is, if there were phones out there, that would go to the issue of contributory negligence, if anything. And the fact is, we provided an affidavit that stated that she was told specifically, you need to, well, in the complaint we say, we want you to approach the security desk to call for safe ride or to get a security officer. But then we provided an affidavit where she was specifically told, don't call. We want you to go to the security desk. I understand that. But was it proper for the defense in a 2619 motion, which is what this was at 2619, to put forward via an affidavit later, a deposition that you requested, but via an affidavit, that there were phones she could have used? No. The bottom line answer is no, because that's not an affirmative matter that would defeat the plaintiff's claim. It doesn't defeat the claim that she could have called. She was told, and the pleadings need to be accepted as true, the complaint allegations, that she was told that she should go to the desk. The fact that she could have called, that's something that the jury can consider when this case goes to trial as to the issue of contributory negligence. But it certainly doesn't defeat the allegations in the complaint. But again, I'm sorry. Please, Judge. Go ahead. Counsel, in my reading of the excerpts from the judge's ruling, there is some discussion or the judge mentioned something with respect to duty and some suggestion that there is a finding that there is no duty. This is the fifth amended complaint. Had there been earlier allegations with respect to premises liability and some ruling with respect to duty? The answer is we had never claimed any premises liability action at all. We've never alleged it. Premises liability law isn't relevant to this case at all. This is a case about breach of contract and breach of a voluntarily assumed duty. The question is what was the extent of the duty that was undertaken? The court actually found that this was a foreseeable event. The court actually found that there was a duty, but that it wasn't triggered. And the fact is the fact that the incident, the actual attack, took place off of the premises, off of the defendant's premises, is not relevant and is not part of the analysis in this case. What is part of the analysis in this case is what promises did they make and how far did those promises extend? And the promises extended to the area where the attack took place and where she parked. They promised to provide these services, both the safe ride and the escort services. They've been kind of lumping everything into saying safe ride services. They didn't just offer safe ride services. They promised safe ride services to transport and they promised escort services to take these employees to where they parked. And on the night in question, they didn't provide either, and both of those areas where she was attacked and where she parked were within the areas in which they provided those services that they provided, I mean that they promised. So the extent of the voluntary undertaking extends absolutely to the area where she was attacked and absolutely to the area where she parked. The trial judge held, ruled, as a matter of law, that there was no breach of duty. That's really what he said, right? He said we've got a duty here. He accepted, I think, it seemed to me that he accepted the premise that there was a promise, a duty, if asked by the employee for the University of Chicago to get people safely to their parked cars. I don't think he disputed that. What he said, though, is that the University of Chicago never said we're going to read the employees' minds. They're going to have to tell us they need a ride. And they had phones. And the existence of those phones was put forth in an affidavit that I did not read you to counter. You didn't say, no, there weren't phones. You did say we were told not to use them. But aside from that, their argument is, and the trial court's ruling was, that the duty was never breached as a matter of law. I think what the judge said was we can't find the defendant's libel here because the duty wasn't triggered, that the plaintiff did not avail herself of the services that were promised. And I have a couple of responses to that. Number one, if they had kept their promise of a security guard being present 24 hours where they could be approached and told, they would have known. So there wouldn't be any reason to use a phone call. If they had kept their promise, the security guard would have been there and would have known that she was needing a ride or an escort. And the other thing is, it seems incredible to me that the University of Chicago can instruct somebody to request their services that they're promising in exchange for her working at night in a dangerous neighborhood. It seems incredible to me that when they instruct her to do something specifically and she follows their instructions to a T and they aren't there as they promised, that they can now fall back on that and say, well, we didn't know about you coming here. So she followed their instructions. She did her part. She did exactly what she was told to do. If they had said, you need to call on the phone, don't approach the security desk, she would have done that. But she did as she was instructed, and they weren't there. I think the fact that she followed their instructions as to what to do and what not to do should constitute availing herself of the services. And I think it's important to note that in one spot in their brief, the University of Chicago's brief, there's a couple different spots. In one spot on page 13 of their brief, they say in the context, they say if the plaintiff had engaged the services, there would have been a duty. But it's interesting to note that on page 14 of their brief, they said if she had attempted to engage their services, there would have been a duty. I think that's interesting because it is a matter of semantics. What does it mean, engage? What do you mean by engage? Certainly attempting, doing everything that she was told to do, should constitute engaging or at the very least attempting to engage, which they admit that would trigger the duty as well. And it makes sense that it would trigger the duty because what else is she supposed to do? Again, calling on the phone, is that something that she may have done? Sure, it's something that she could have done, but that's not part of the analysis here. There's a lot of things that she could have done, but she wanted to avail herself of the services that they promised, and she did exactly as she was told. And now it's up to the jury later on to say, hey, there were phones out here, and that's something that we're going to reduce your recovery by. So I think that that is a critical issue, engagement of the services, and I think she did. There is a negligence count in the Fifth Amendment complaint. Yes. Would the trial judge have been correct in dismissing the complaint based on a finding that there was no duty based on that negligence count? No, I don't think so. There's no, we stated, we factually alleged a cause of action. They didn't file a 2615. They were filing, they filed a 2619. They had to, it was their responsibility to provide evidence of an affirmative matter that would defeat this cause of action, and they didn't provide an affirmative matter. The only thing that they did is they offered the affidavit and deposition of Mr. Morris, the director of security, and there's three important points that his affidavit and deposition provide. Number one, he has no personal knowledge of what the promises were. So that certainly doesn't defeat the plaintiff's claim. Number two, he says that security desk and this security desk are not manned through the night. Well, that doesn't defeat the claim. And that only supports the plaintiff's claim that the desk wasn't manned as they promised. And the other thing. Well, he went a little beyond that. He said it has not been manned since 1990. Exactly. Well, and I think what the point they're trying to make there is that the plaintiff, this was not the first day of working the night shift, the night that this horrible event happened. And so, you know, I think, I don't want to make their argument informal, but I think what they're trying to get at is she wouldn't have thought that the security desk in Goldblatt was manned 24-7 because it's never in her time of employment been at night. Yeah. Well, in the complaint, again, allegations taken true, we say based on her past experience, she thought there would be a security guard there. And I don't want to get into the facts, but if you want me to, I will, that what facts are going to be produced at trial is the security desk was manned, and they were there, and she had used them before. So this is past experience. I don't want to. Okay. But I think what that does, what his affidavit does at most is create some sort of issue, a fact for the jury to decide, was it manned or not manned? Counsel, we review the trial court's finding with respect to 2619 de novo. With respect to count one, the negligence count, should this court determine that there is no duty, what would be your response? With all due respect, the court was wrong. I mean, there's a duty. There's a duty based upon the promises that were made and the reliance of my client on those promises. She wouldn't have worked a night shift if she didn't have a safe way to get to her car in an area that's known to be dangerous based on statistics and specifically as to women walking at night getting raped. She wouldn't have taken that job, and that's alleged in the complaint. And the University of Chicago knew this was a dangerous area. That's why they made these promises to her in exchange for her agreeing to work this night shift. So I think there was a duty based upon the promises. It's a voluntarily assumed duty. They don't normally have a responsibility to protect somebody. I understand that. But in this situation, it was a special situation where they made the promises and they had a duty to keep those promises within the extent of the promises that they made. And this event falls right into the extent of their undertaking. It's exactly what they were promising to help deter. Of course, nothing is for sure. But in all likelihood, if they had provided the services that they had promised, she wouldn't have been attacked in a dark area walking several blocks to her car. Okay, counsel. I think you can wrap it up. I think you've made your argument. Okay. The bottom line, Your Honors, is that it being a 2619, they had the obligation to provide evidence of an affirmative matter that defeated the claim. And they didn't. Thank you for your time and attention. Counsel, I think you have to show us why the complaint is your affirmative defense transferred the burden or show us that the complaint is not trumped by your affirmative defense. Or it is trumped, I should say. All right. Yes, Your Honor. Because right now, in my mind, we have a factual dispute and I don't see anybody leading the pack here. I'm happy to clarify that, Your Honor. All right. I would suggest that there is not a factual dispute. What happened here is that there are certain, think of it in terms of a Venn diagram, there's one set of facts that were alleged by the plaintiff in the Fifth Amendment complaint. There's a separate set of facts that have been supplied in the form of an affidavit from Mr. Morris. The facts in the two are not in disagreement. They are separate. They complete the picture, but they are not in disagreement. If you look specifically at the facts that were alleged in the complaint, there is nothing in the complaint, as Justice Ellis has mentioned, with regard to the house phones that were present in the gold black pavilion near the security desk that plaintiff approached. There also is, if you look at specifically her Fifth Amendment complaint, and I would point you to paragraphs 8, 9, and 11. In paragraph 8, she states, defendants through their agents and employees specifically instructed users of the security personnel escort service, including the plaintiff, to obtain a security personnel escort to and from their vehicles by approaching security personnel located at any of the security desks. It doesn't say when. It says go ahead and approach a security desk. And as we find out in the deposition that was taken by the plaintiff of Mr. Morris, there were permanent security guards at certain security desks. For instance, there was a permanent security guard at the adult ER adjacent to the gold black pavilion. There was a permanent security guard at the Bernard Mitchell building, again, adjacent to the gold black pavilion. They were there permanently, 24 hours a day, 7 days a week. You've got a complex that has 24 buildings, is that right? 24 buildings, yes. So at that time of day, there's a group of five buildings in the back and gold black is one of them? I believe that configuration is correct. How close was the nearest manned security desk? I have never walked it. Is there anything in the record that answers that? You said adjacent, but I didn't see anything in the record that told me where the manned security desks were. So if it's in the record. It is in his affidavit. If you look at, for instance, in the appendix, it's 8-129. And the question is, the gold black pavilion entrance, which is shown in Exhibit 4, which is the two closest security desks that are manned 24-7? The adult ER and the Mitchell-Bernard-Mitchell entrance. So both of those security guards, which are attached to the gold black lobby via inside routes, are manned 24-7? Answer, the adult ER is manned by the University Police, who are sworn officers in the state of Illinois and armed with, etc., etc. So it doesn't give you an amount of minutes to walk from gold black to Bernard-Mitchell or the adult ER, but they are connected inside. You don't have to walk outside, for instance, in February to get from one building to another. They're all connected, all 24 buildings. Again, going back to paragraph 9 of the Fifth Amendment complaint, she alleges that between May 2008 and February 16, 2009, the gold black pavilion building near the entrance exit on 59th Street, at which defendant security personnel were supposed to be stationed and available. I'm not sure what supposed to be means. There certainly isn't any foundation for that factual conclusion. And plaintiff has to supply that support. Well, she's saying that's what she promised would be the case. That's what she means by that, right? I don't know what she means by supposed to be. Certainly, if you look at paragraph 12, she says promises were made on numerous occasions by her superiors, and she names three people. And that applies to paragraph 11, in which there's five different bullet points, and the important one is to provide security desks manned by security personnel at all times during the night. Well, it doesn't say all security desks. It just says security desks. So that is why we supplied the affidavit of Mr. Morris, because he completed the picture. And he says not all security desks were manned, and they were never manned in the gold black pavilion after 3.20 p.m. Is the position that the affidavit then serves as the affirmative matter to defeat the complaint, or does it simply serve as an alternative view of the facts? I don't think it's an alternative view. It certainly supplies additional facts, and I would say those additional facts are the affirmative matter, and that if she wished to engage the Safe Ride service, she needed to call. And the first time we hear that she was told not to call is not in the complaint. It's in her affidavit. And if you look at her affidavit, it's even less clear and more vague as to what was going on. Paragraph four of her affidavit, it says, in fact, I was specifically instructed by defendant's staff members not to call. Well, in her complaint, she's talking about supervisors. Now, in her affidavit, she's talking about staff members. We don't have any idea who these staff members are. There's no foundation for that whatsoever. And when Judge Lawrence says that he's not going to essentially not pay any attention to this affidavit because he doesn't think it's worth anything in his analysis, well, what he's finding is it doesn't comply with Rule 191. But he was talking about it in a different context, wasn't he? He was talking about at that point in the oral argument, it got a bit off the rails, it appeared, and they were talking about the scope of the entire promise. He was talking about her entire theory of the case, not just this one affidavit. And he said where in the evidentiary record is there support for the promise that you're alleging?  He pointed to this affidavit and said this affidavit is not enough. I agree that affidavit was not enough to support the entire theory of the case, but it wasn't intended to support the entire theory of the case. It was intended just to answer your affidavit. The entire theory of the case is in the complaint, right? Well, no, I don't think the entire theory of the case is on the complaint. If it was, she wouldn't have supplied the affidavit. But didn't she supply the affidavit in response to? Certainly. The shifting of the burden is why she supplied the affidavit. And the first question before we even started was supplied by Justice Smith was, you know, is this a 2619 motion or is this a motion for summary judgment? Certainly what was filed was a motion for dismissal according to Section 2-619. We supplied an affidavit, which is typically done with 2619 motions. In response, here's where it starts getting fuzzy. Because it wasn't just an affidavit that was supplied in the burden shifting process. So it wasn't just plaintiff's affidavit that was supplied. Now we have a deposition transcript. We have orders. And we have additional papers attached to that response. So I don't blame Judge Lawrence for construing this as a motion for summary judgment because it kind of evolved in that manner. And then in reply to the response, additional documents were supplied, the common sense pamphlet. And we find out a lot of information in that common sense pamphlet. So the question is, can it be construed as a motion for summary judgment? Now we've argued in our papers that we should get affirmance based on 2-619. But could it be construed as a motion for summary judgment? And I would say the answer is yes. And if you look at the Reynolds versus Jimmy Johns case, at the end of that opinion, it talks about, well, you know what, if 2619 isn't really proper and it's more like a motion for summary judgment, that's okay if there hasn't been prejudice to the plaintiff. And I would suggest here there has been no prejudice to the plaintiff. The plaintiff went out and took that deposition, supplied it. If the plaintiff had thought anything else was necessary, could have obtained that information and supplied it. It would be a motion for summary judgment if one side of the movement puts forth evidence showing that something hasn't been established through discovery. The plaintiff can't just say, well, I alleged it in my complaint, and you have to take that as true. That's not an argument you can make on summary judgment. But it is an argument you can make on a 2-619 motion, right? That's correct. In 2-619, all the facts in the complaint are alleged as true, are considered true, yes. And so the plaintiff is saying here, I've got a theory as to what I was told. You can call it a voluntary undertaking under a negligence theory. You can call it a breach of contract under a contract theory. But it all comes down to a promise. And she is alleging that this is what I was promised, and this is the deal that we made. I relied on this promise. I accepted it, if you want to talk in contract parlance. And the deal was I had to go to a manned security desk. I was promised it would be manned. And I was told to make an in-person request. Before we even get to her affidavit. That's their theory of the case. And it seems to me your theory of the case is, well, that's not quite right. Because there was another way you could have contacted them, and that's by phone. And it isn't that just as to use Justice Cobb's terms. Isn't that just your version of what the deal was versus the plaintiff's version in the complaint? And if you're just battling out over which version is factually correct, can we do that on 2-619? Well, again, how I answer that is, back to my original analysis of the Venn diagrams, I don't really think it's a battle. I think it's a complete picture. Well, what about the common sense pamphlet? I mean, you used the common sense pamphlet and you used Rodney Morris' testimony to show that there was an orientation and that employees were told certain things. And everybody knows, I mean, I'm sure you didn't quite say it like that, but everybody knows there's phones. And you can use them. I mean, that's, I think, kind of your argument. And the plaintiff is saying, I'm not going to engage in a credibility determination. I'm not saying what you're saying is implausible, because I don't think it is implausible. But the plaintiff is saying that is not what I was told. My supervisors, security guards, whatever, I wasn't told to do it that way. I was told to do it this way. And how can we say at this stage, when we're taking that as true, that you win, your version trusts? She says that it's not true in her affidavit. And it really may come down to whether or not that affidavit is entitled to. No, first of all, you have to shift the burden to her. You have to show that your evidence trumps. And if all you're doing is contradicting the allegations of the complaint. I mean, I think of a 2-6-19-89 as a knockout punch. You've got something that just wipes out their case. And it seems here this is much more intensely factual, that you've got a version and you've got support for that version. I submit, I acknowledge. But you've got a version, he's got a version. And you're just saying pick my version. Counsel, assuming that, accepting that it was correct for the trial judge to treat this as a motion for summary judgment. And now we have counter affidavits. We have plaintiff's affidavit and we have defendant's affidavit. And although you characterize them as adding additional facts or rounding out the picture, they in fact don't agree. They are divergent. Wouldn't that, if we were even considering this a motion for summary judgment, wouldn't that raise issues of material? Well, her affidavit would have to comply with Rule 191. And I would submit to the court it doesn't. And accepting that it is not in compliance with Rule 191, it nonetheless takes a different position than does the defendant's affidavit, does it not? It doesn't resolve all of the factual issues in the case. I'm sorry, I'm confused. So we're accepting that it does comply with Rule 191 or it doesn't? Well, I'm not going to make a determination as to whether it does or does not. I think there's been some discussion here that it does not comply with 191. But we do have her affidavit and then we have the counter affidavit, which would appear to me raise or continue to raise issues of material fact. And if we were to accept that the judge was correct in treating this as a motion for summary judgment, it was not, wouldn't the affidavits as presented, wouldn't all of the pleadings that are currently before the trial judge raise an issue of material fact? Wouldn't dismissal be proper? I don't believe that an issue of material fact has been created because the statements in her affidavit shouldn't be accepted. Well, we have the complaint as well. What's that? We have everything. We have the complaint as well. Yes, you do have the complaint. But there's nothing in the complaint that disagrees with what Mr. Morris says in his affidavit. So if there was tension there, then I would concede that. But I might submit that there's not tension there. Did you move to strike the affidavit at the trial court? We did not move to strike that affidavit. Did you argue on appeal that it didn't comply with 191? No, I'm making that argument here before you, Your Honors. One statement made by my opponent today was, the question is, what is the extent of the duty undertaken? And that really is at the root of what this court needs to decide. And we have two different versions of what that undertaking was. The defendants submit that the undertaking was to provide a service. But if a service doesn't exist or isn't active in a vacuum, it needs to be engaged. There has to be some affirmative act taken by the plaintiff to engage that service. What did she do on this evening? She went to the security desk. There wasn't anyone there. She was on her break. She waited 10 minutes, and she left. You know, she had a lot of options. She could have taken a call for an escort service, as the plaintiff suggested. She could have called for a safe ride, used her cell phone, used the house phone, used an emergency phone outside the building. She could have walked down to the ER, the adult ER or the other adjacent building where there was a security guard to personally ask for a service. But she didn't. But those don't go to contributory negligence, do they? No, I don't believe so, Your Honor. I believe it goes to whether or not the voluntarily assumed duty existed yet. And I would say the duty was to provide the service. If it had been engaged, then, yes, that duty was active. And if something had happened to her waiting for the bus or on the bus or after she got off the bus, we might have a different scenario. But that's not what we have here. She never called for it, and she walked through a park, which she had been told not to do. Let me ask you a question that hasn't been raised before, and maybe in a sense it's not relevant, but I'm curious. And that is, this case was dismissed four prior times. Was the complaint the same complaint, or was it different each time? It was different. How many do you remember? And I didn't handpack every one of those complaints, but I looked mostly at the fifth amendment. But, yes, it was different, and it did change over time. But plaintiffs would be able to speak to that, I'm sorry, more clearly than I could here. All right. So I would submit to your honors that the cases that matter in determining whether or not there was a voluntarily assumed duty here are the Lewis v. Raspberries case and the Jackson v. Shell Oil case. And the Jackson v. Shell Oil case is important. I would submit because that was a 2619 motion that was affirmed by this court in 1991. So those are the two cases that I would submit warrant affirmance of the dismissal below. And if there are no other further questions, I thank you. Thank you. Are you going to answer my question? Sure. The four prior complaints were dismissed on the basis of 2615. And on one of the occasions, and they were very different, very different, one of the occasions there wasn't even any argument. We decided to withdraw, voluntarily dismiss or withdraw the complaint to replete it to satisfy some of the concerns that the defendants had on a 2615 basis. Oh, excuse me. I just very briefly, I just wanted to mention that in the plaintiff's affidavit, it states, I was promised by multiple staff members of the defendants that all security desks, would be manned with security personnel at all times during the night shift. I was instructed by multiple staff members of the defendants that in order to obtain a safe ride transport or security escort during the night shift, I should approach the security personnel manning any security desk, including the security desk in Goldblatt Pavilion Lobby, and request the service that I desired. And the reason that we did provide that affidavit was exactly to rebut the arguments that the defendants were making. And so you've got the plaintiffs stating one thing with respect to the security desk, and you've got Mr. Morris saying that they weren't all manned. That clearly is an issue of fact, at the very least, that is critical to this case and needs to be decided by a jury, not here at the pleading stage. With respect to the Lewis case, I'm sorry. The Lewis case is, if you want me to address that case, I will. But that was a case that basically, that was a premises case. And that's where the landowner didn't have a responsibility as to this. It was both, it was a premises liability case and a voluntary case. They did address that, you're right, they did address that. But what they found in that case is that once they left the property and didn't ask the bartender, that was the determining factor. So in our case, it's very, very different. She did exactly what she was told to do in order to engage or attempt to engage those services. And if there is a specific question or issue that you'd like me to address at this point, I will. I thought that during the original argument, I addressed most of the arguments. No, you did a nice job. Thank you. Okay, thanks very much. Thank you. Both presented your case and represented your clients well. We'll take and figure this out. I've got to go back and re-read the difference between a 619 and a summary judgment.